## No. 15,676.

Sterling Lumber and Investment Company *v.* Wilkinson.

(185 P. [2d] 1006)

Decided October 14, 1947.   Rehearing denied November 3, 1947.

Messrs. Bancroft, Blood & Laws, Mr. Mitchell Benedict, for plaintiff in error.

Mr. Forrest C. Northcutt, for defendant in error.

MR. JUSTICE JACKSON delivered the opinion of the court.

WILKINSON obtained a jury verdict in the amount of $7,438.33 in an action involving a contract. From the judgment based on that verdict the Lumber Company comes here by writ of error.

Wilkinson, operating as a salesman under a written contract with the Lumber Company, had a certain sales territory. He was compensated on a commission basis for sales which he negotiated in that territory—the percentage varying according to the material and amount sold, the maximum being sixty per cent of the Lumber Company's profits on sales of Forest products in carload lots. In 1942 Wilkinson learned that the United States War Department would let, on competitive bids, a contract for furnishing materials for 286 roof trusses for its Sioux Ordnance Plant at Sidney, Nebraska. He called this matter to the attention of the Lumber Company, which resulted in the latter's bid of $275,990 being the successful one. The contract between the War Department and the Lumber Company was entered into and performed in the summer and fall of 1942 and contained a clause making it subject to renegotiation under the Act of Congress which had become effective April 28, 1942. It was agreed after various conversations between the officers and directors of the Lumber Company and Wilkinson that Wilkinson should participate in the net profits of the truss contract on a fifty-fifty basis with the Lumber Company.

After the job had been completed the Lumber Company, believing it was safe in so doing, remitted two payments totaling $20,000 to Wilkinson on account of his share of the profits of the truss contract. In the subsequent renegotiation of this contract, $29,347 of the amount shown as due Wilkinson was disallowed by the Government negotiators as a part of the costs—the Government allowing $4,500 to Wilkinson (figured at the

rate of $1,500 per month for three months services) and also allowing the Lumber Company $5,959 for overhead. The result of the renegotiation is set forth in the Lumber Company's letter of December 23, 1943 to Wilkinson, being plaintiff's Exhibit O, reading as follows:

"We have just received the closing agreement from Omaha and the Government confirms the correctness of the following figures:

"The renegotiable column of the statement we gave the Government included the following figures for the Truss Contract

| | | |
|---|---|---|
| "Received for the Contract | | $275990.00 |
| Cost of the Contract | | |
| Material furnished by SL&ICo. | $107125.00 | |
| Fabrication, Hughes Bros. | 75600.00 | |
| Fabrication, Sterling Home Realty Co. | 25571.00 | |
| Amount due Wilkinson | 33847.00 | |
| Overhead, SL&ICo. | 5959.00 | 248102.00 |
| Basic Profit as presented by us | | $ 27888.00 |
| The Government allowed only $4500.00 of the $33847.00 and threw back into profit the difference | | 29347.00 |
| Government Basic Profit before renegotiation | | $ 57235.00 |
| Government Basic Profit after renegotiation | | 21875.00* |
| Excess Profit on Truss Contract | | $ 35360.00 |

*This amount is 10% on cost figures by the Government as follows:

| | |
|---|---|
| Our cost as shown above | $248102.00 |
| Disallowed | 29347.00 |
| Government's cost | $218755.00 |

The Government's final figures are:

| | | |
|---|---:|---:|
| Recd. for the contract before renegotiation | | $275990.00 |
| Excess Profit on Truss Contract | | 35360.00 |
| Recd. for the contract after renegotiation | | $240630.00 |
| Cost of Contract | | |
| as shown above | $248102.00 | |
| Disallowed | 29347.00 | 218755.00 |
| Basic Profit after renegotiation | | $ 21875.00 |

"In making up the tentative statement we handed you in Mr. Benedict's office, we credited you with one-half of the basic profit after renegotiation and this was in error as this figure was after deducting $10459.00 overhead ($4500.00 plus $5959.00) which, according to our agreement with you, should not have been deducted; therefore

| | | |
|---|---:|---:|
| "Basic Profit after renegotiation | | $21875.00 |
| Add back overhead as shown above | | 10459.00 |
| Amount to be equally divided between | | |
| you and the Company | | $32334.00 |
| Your Share | | 16167.00 |
| On this basis your account would be: | | |
| Amount due on Contract | | $16167.00 |
| Amount due for miscellaneous commissions | | 2418.00 |
| Cash paid on contract | $20000.00 | |
| Balance due the company | | 1415.00 |
| | $20000.00 | $20000.00 |

"Will you please let us know whether or not you are willing to settle on this basis and, if not, tell us clearly how you propose to settle as we desire to give full consideration to your views.

"Merry Christmas to you all."

The evidence shows that Wilkinson participated in the renegotiation of the contract with the Government, and took part in the argument over the disallowance made

by the Government negotiators. He had previously acquiesced in the renegotiation being on a consolidated basis, instead of pertaining to the one truss contract in which he was interested. In the settlement with the War Department it was agreed that the excess profit of $35,360 on the truss contract should be liquidated as follows: $20,000 should be paid in cash to the Government and the balance of $15,360 should be credited to the Lumber Company on other sales made by the Lumber Company to the Government. On these other sales it appeared that the profit received by the Lumber Company had been approximately one per cent, whereas the allowable profit on such sales was shown to have been three per cent. As a result of this arrangement the Lumber Company signed an agreement with the War Department showing it was indebted to the latter in the amount of $20,000, and this agreement was introduced in evidence by Wilkinson who, while a witness on the stand, took the position that the $20,000 cash payment made by the Lumber Company to the Government was a proper deduction in figuring the net profit on the truss contract, but that the $15,360, being the balance of the excess profit of $35,360 which had been found and disallowed by the Government negotiators, not having been paid out in cash, but having been allowed as a credit to apply on other contracts where the Lumber Company had been underpaid, was not a deduction in figuring the net profit under the truss contract. By the amount of the verdict the jury must have adopted Wilkinson's theory, regardless of his letter of August 11, 1943, introduced in evidence, reading as follows:

"Mr. R. K. Marsh, President,
Sterling Lumber & Inv. Co.
Denver, Colo.

"Dear Mr. Marsh:

"When I returned I found your letter relative to the possible renegotiation.

"Our original agreement was for a fifty-fifty division of the profits or losses on the Sidney Truss Contract, which turned out to be a profit, however owing to a possible renegotiation of the Contract by the Government we are and will be unable to determine the net profit until that matter has been disposed of. Our agreement was on a net basis therefore each of us would be liable for 50% of any amount that might be charged back through the renegotiation, or in other words would become a part of the overhead.

"With kind regards, I beg to remain,

"Ben Wilkinson."

There was in evidence a letter from the War Department setting forth the fact that: if the Sioux Ordnance truss contract had been renegotiated separately and by itself, the item of $35,360 of excess profit still would have been disallowed; that no distinction was made on that score between its being renegotiated on a separate basis or on a consolidated basis.

■ The first cause of action in Wilkinson's complaint is based upon the theory that he is entitled to recover the difference between the gross amount received by the Government on the bid price and the original cost to the Lumber Company, without any reference to renegotiation. His testimony, as already noted, varied from that position; he conceded the right of the Government to renegotiate and that any charge-back by the Government should be deducted before figuring the net profit. Having conceded that point, we do not believe he is in a position to argue that only that portion of the charge-back which is refunded in cash can be allowed as a deduction and at the same time refuse to accept that portion which is entered as a credit. We are of the opinion on this phase of the case that it was simply an item of bookkeeping—that there was no issue of fact to go to the jury, and that the trial judge as a matter of law should have held, under the undisputed evidence, that

the contract, in so far as the deduction for excess profits was concerned, should have been for the full amount of $35,360 before figuring the net profit to be divided equally between the Lumber Company and Wilkinson. *Western Colorado Power Co. v. Gibson Co.*, 65 Colo. 288, 176 Pac. 318. The essential undisputed fact was the elimination of an excess profit of $35,360 in the renegotiation. *Dobbins v. Graer*, 50 Colo. 10, 114 Pac. 303. The method of its elimination, whether by payment of all cash or by exclusively a credit item or by a combination of both, as in the instant case, was simply a matter of detail to be worked out to fit the circumstances of each individual case by the Government negotiators.

Counsel for the Lumber Company also specified error in that the instructions given to the jury submitted an issue as to material, lumber and merchandise left over and not used, and also submitted to it any issue as to whether the depreciation charge was excessive on the tools and equipment that were used on the truss contract. Special verdicts were prepared on these questions, and the jury accordingly returned the following "special verdict:"

"1. What was the total reasonable value of the materials furnished and charged to the truss contract and thereafter returned to the defendant? Answer. $1,353.05.

"2. What was the reasonable value of the tools and equipment returned to the defendant after the completion of the truss contract job? Answer. $3,030.87.

"3. What was the value of the lumber purchased by the defendant and not charged to the job? Answer. $258.24." In explanation of these special findings of the jury, it should be stated that the evidence disclosed that some materials unused on the truss contract eventually were shipped back to the Lumber Company, but through an oversight were not included in the final figures on the truss contract. Likewise there was some lumber purchased by the Lumber Company and not charged to the job as it properly could and should have been.

In connection with the depreciation of the equipment, representatives of the Lumber Company testified they had taken the usual fifty per cent depreciation allowed by the Federal Bureau of Internal Revenue for income tax purposes. Wilkinson, nevertheless, maintained that it was excessive, and the jury by fixing the value of the tools after the completion of the job at $3,030.87 found that the depreciation taken by the Lumber Company was excessive in the amount of $778.

On this question of whether the matter of materials returned should be included in the final figures, there was conflicting evidence as well as to their value. We are therefore of the opinion that the jury's findings on these matters should be sustained. After applying the figures reached by the jury in the special verdicts, the revised computation would appear to be as follows:

Reasonable value of materials furnished and charged to the truss contract, and thereafter returned to the Lumber Company............$1,353.05
Less the value of the lumber purchased by defendant and not charged to the job......... 258.24

Balance ...................................$1,094.81
Excessive depreciation on tools and equipment returned to defendant and charged to truss contract job ................................. 778.00

$1,872.81

The Lumber Company's share in the foregoing charges – ½ of $1,872.81....................$ 936.40
which sum is to be subtracted from the balance due the Lumber Company, as shown in Exhibit O ................................. 1,415.00

This leaves a net balance due the Lumber Com-

pany of ..................................$ 478.60
to which should be added interest and costs.

The judgment is accordingly reversed, and the cause remanded with instructions to enter judgment in accordance with the views expressed in this opinion.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE LUXFORD concur.